W. W. WARDELL ET AL., PLAINTIFFS IN ERROR, VS. ANNIE B. MCCONNELL, DEFENDANT IN ERROR.

1.  **Liquor Selling**: LIABILITY OF LIQUOR SELLERS.  Persons licensed to sell intoxicating liquors are jointly and severally liable for all damages resulting from their traffic, and actions may be maintained against them jointly for all damages to which they have contributed by the sale of liquors.

2.  ————: LIABILITY OF PRINCIPAL AND SURETIES ON LICENSE BONDS.  Principals and their sureties upon license bonds are

liable to an action for damages jointly with the principals and sureties upon other bonds of a like character, where all the principals have contributed to the same injury by the sale of intoxicating liquors.

3. ———: LIABILITY OF SURETIES. The sureties upon the bond of a licensed vendor of intoxicating liquors are liable, not only for the damages resulting directly from the acts of their principals, but for all damages to which such acts contribute. And where, during the existence of a license based upon such bond, the principal sells intoxicating liquors to one who is disqualified to earn a support for his family, by reason of his intoxication, the liability of the surety attaches and continues throughout the period of such disqualification, whether the same terminates during the license year or continues for a longer time.

4. ———: ———: SUIT BY MARRIED WOMAN. Where a married woman sues upon license bonds for loss of support for herself and children, occasioned by the disqualification of the husband to earn such support by reason of his intoxication, she does not sue in the capacity of a guardian or next friend for her children, but the action may be maintained by her in her own name and right, and the damages, when collected, must be paid to her to be used as she may see proper for the maintenance of herself and children. In such action she may join her children with her, or she may prosecute the suit in her own name for the whole damage, as she may elect, it being shown by her petition that she has such children who are deprived of their means of support by reason of the disqualification of the father or person upon whom such support devolves.

ERROR to the district court for Richardson county. Tried below before BROADY, J.

*Reavis & Gilman*, for plaintiffs in error, cited : *People v. Buster*, 11 Cal., 215. Pomeroy's Legal Remedies, Sec. 390. Smith's Leading Cases, 584. *Roose v. Perkins*, 9 Neb., 311.

*Frank Martin* (*E. W. Thomas* with him), for defendant in error, cited: *Roose v. Perkins*, 9 Neb., 304. *King v. Bell*, 13 Id., 409. *Kerkow v. Bauer*, 15 Id., 150. *Buckmaster v. McElroy*, 20 Id., 557.

REESE, CH. J.

This was an action against plaintiffs in error for damages resulting to defendant in error and her child from loss of support by reason of the intoxication of her husband. The suit was brought upon the several bonds of those whom, it was alleged, had sold plaintiff's husband intoxicating liquors, and with them were joined their sureties upon their bonds. Separate answers were filed by the sureties on each bond, and by which, among others, they presented the defense of a misjoinder of causes of action, and a misjoinder of parties defendant. The allegations of the petition were denied, except as to the execution of the several bonds declared upon, and it was alleged that defendant in error contributed to the production of the intoxication of her husband by purchasing for, and furnishing to him, intoxicating liquors, and by directing and procuring others to do so, and also by drinking with him the liquors furnished. The reply was a general denial of all the allegations contained in the answers.

The time during which defendant in error alleges she was deprived of support by the intoxication of her husband, who was a physician and surgeon, is alleged to have been during the years 1883, 1884, and 1885.

Among others, the trial court gave to the jury an instruction to the effect that if defendant in error assisted in keeping her husband intoxicated, by encouraging and influencing him to drink liquors which intoxicated him, this would defeat her right to recover in her own behalf, and her recovery would be limited to the damages resulting from the loss of support for her child. There is no question presented as to whether this instruction was correct or incorrect, but under the recent decision of this court in *Buckmaster v. McElroy*, 20 Neb., 557, its soundness may well be doubted.

The verdict of the jury was both general and special, and is here copied in full, omitting title and other formal parts :

" We, the jury in this case, being duly impaneled and sworn, and affirmed, do find and say—

" 1. That said defendants did, each and every one, except the hereinafter mentioned, lay themselves liable by selling plaintiff's husband intoxicating drinks.

" 2. That we do find damages for Anna B. McConnell,. as representative for her child Willie, in the sum of eight hundred dollars, but to Anna B. McConnell, in her own behalf, nothing.

" 3. That we find according to the evidence that the above named amount shall be paid by the said defendants, as follows, to-wit: W. W. Wardell and his sureties, viz., Cresentia Goehling, J. F. Gardner, J. C. Stump, S. M. Saylor, P. W. Birkhouser, for the fiscal year commencing May, 1883, and ending May, 1884, damages in the sum of $200; also, W. W. Wardell and his sureties, P. W. Birkhouser, S. M. Saylor, Cresentia Goehling, for the fiscal year commencing May, 1884, and ending May 4, 1885, damages in the sum of $200; also, John Gunn and Martin Goehling, as the firm of Gunn & Goehling, and their sureties, Cresentia Goehling, Louis Statder, John Statder, Peter Luginbell, John Kutler, for the fiscal year commencing May 4, 1884, and ending May 4, 1885, damages in the sum of $300; also, James Cottier and his sureties, Alf. Stump and Charles L. Frederick, for the fiscal year commencing May, 1883, to May 4, 1884, damages in the sum of $100.

" 4. That Cresentia Goehling, as principal defendant, no cause of action."

SPECIAL FINDINGS.

" Was J. B. McConnell disqualified by intemperance from earning a support for his family for the period of

three years immediately preceding September 17, 1884? *Answer.* Yes.

"Has any of the defendants given or sold to J. B. McConnell intoxicating drinks during the period of such disqualification? *Answer.* Yes.

"Which of them, and during what years? *Answer.* W. W. Wardell and his sureties, for the year 1883 and 1884; Gunn & Goehling and their sureties, for the year 1884 and 1885; James Cottier and his sureties, for the year 1883 and 1884.

"Did plaintiff by her own fault contribute to the intoxication of her husband, and of which she complains. *Answer.* ———."

A joint motion for a new trial was filed by all the unsuccessful defendants, which was overruled upon defendant in error entering a remittitur of $300, the damages being held excessive to that extent. Judgment was then rendered against all the plaintiffs in error for the sum of $500, without reference to the apportionment made by the jury in their verdict.

The apportionment of damages by the verdict of the jury was made by the direction of the court in its instructions. But as the final judgment was rendered without reference to such apportionment, no further attention need be given to that part of the case.

There are two questions involved in this case. The first to which our attention will be given, is as to the right of defendant in error to maintain a joint action against the principals and their several sureties. This also involves the right to maintain suit against principals and their sureties upon bonds executed in different years. As is shown by the verdict of the jury, the husband of plaintiff in error was disqualified from earning a support for his family for a period of three years immediately preceding September 17, 1884. That during this time, W. W. Wardell, Gunn & Goehling, and James Cottier contrib-

uted to the disqualification, by the sale of liquors to him.

Upon our first examination of the case, we were inclined to believe that the action, in the form in which it was brought could not be maintained, as it is a well-established rule, applicable generally to principals and their sureties, that the sureties can only be held liable for the default or miscarriage of their own principals, and not for the actions of others, for whose conduct they were in no way bound. But upon more mature reflection we are forced to the conclusion that this principle has no application to the case at bar.

By section 15 of chapter 50 of the Compiled Statutes of 1887, it is provided that the person licensed shall pay all damages that others may sustain in consequence of his traffic in liquors. By section 16 of the same chapter, it is made lawful for any married woman, or other person at her request, to institute and maintain, in her own name, a suit on the bond, required by the act, for all damages sustained by herself and children, on account of such traffic. And by section 18 it is provided that in an action brought for damages by a married woman, whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to the person disqualified, during the period of such disqualification.

This, I think, clearly implies, and indeed expressly provides, that in order to hold a licensed person liable on his bond, it is only necessary to prove that he sold intoxicating drinks to the person disqualified, during the time of his inability to provide for his family. If such sale is made, the person making it is not only liable for the actual results of that sale, but liable for all damages growing out of the disqualification, without reference to the length of time through which it may continue. Therefore, if War-

dell, in the year 1883, sold intoxicating liquors to McConnell, during the time of his disqualification, he is not only liable by that sale for the damages sustained by defendant in error during that year, but through the whole time of the disqualification, which by the verdict of the jury extended through three years immediately preceding September 17, 1884. Not only would Wardell be liable, but his sureties would be equally so.

There can be no apportionment of the damages among the different defendants. If they are liable at all, they are liable for the whole term of the disqualification; provided, that during that time the principal, while held by the bond signed by his sureties, contributed to the disqualification, by the sale of intoxicating drinks. *Roose v. Perkins*, 9 Neb., 304. *McClay v. Worrall*, 18 Id., 49. If the disqualification terminated with the end of the license year, the further liability of the principal and his sureties would be thus ended. But if it continued, without any intermission, for a longer period, the liability must also be held to continue with it. This being true, not only the principals, but with them their sureties, would be liable for the whole damage, without reference to its duration. The liability of the principals is joint and several. They may be sued singly or jointly. This liability, in cases like the one at bar, grows out of the trust imposed by their license. This license depends upon the bond for its validity. The obligation of the principals being joint, it must necessarily follow that the obligation of the sureties is equally so—so long as the principals contribute to the injury complained of in the plaintiff's petition.

By the force of the chapter under consideration, every person who signs a bond for a seller of intoxicating drinks, becomes not only responsible for the acts of his principal, during the time of the existence of such bond, but also for the results of such acts, however long they may continue. If other persons contribute to the disqualification, and

thereby become equally liable with his principal, it is no affair of his, and his liability will not be in the least diminished. *McClay v. Worrall, supra.* Such being the case, it necessarily follows that the signer of the bond for a dealer in intoxicating liquors becomes not only a surety for the damages growing out of the immediate acts of his principal, but also, in effect, a surety for every other liquor seller sued with his principal, who may participate with him in producing the disqualification of a married man to support his family, so long as his principal and other licensed persons contribute to the same disqualification. There is no reason, therefore, why the plaintiffs in error were not properly joined in the action.

We recognize this as a radical departure from the general law governing principals and sureties, but that it is in accordance with the provisions of the chapter referred to, we entertain no doubt. We are unable to find any cases decided by this, or any other court, which bear directly upon this point, for the reason that we are confined to the condition of our own statute, which is unlike that of any other state in many of its provisions.

The next question presented is, as to the right of defendant in error to maintain the action, the jury having found that she was entitled to no relief, owing, doubtless, to the testimony given by some of the witnesses, that she had contributed to the production of the disqualification of her husband, by furnishing and permitting others to furnish to him intoxicating liquors. As we have before said, it may well be doubted whether any action on the part of the wife could work an estoppel as against her and prevent the maintenance of an action by her in her own behalf. But that question is not before us, except so far as it may incidentally arise in the discussion of the question in hand. The statute permits the wife, or any other person by her request, to institute and maintain, in her name, a suit on the bond of a liquor seller for all damages sustained

by herself and children, and the money, when collected, shall be paid over for the use of herself and children. The petition of defendant in error contains no reference to her children, except the allegation that John B. McConnell and defendant in error " were joined in marriage and have lived together as man and wife, and as the fruit of the said marriage they have had born unto them one child, a boy, Willie, who is now of the age of two and one-half years; that at the time of said marriage, said J. B. McConnell was a practicing physician, with a good education and well fitted by study and experience to discharge all the duties of his profession as a surgeon and doctor of medicine, and he still is of abundant experience and education to discharge all of the duties of said profession, and earn large amounts of money for the support of himself and said family, when he is not disqualified by the excessive use of intoxicating liquors."

It is contended by plaintiffs in error that the jury found for a person not a party to the action, and that such finding cannot support the judgment. They insist that the plaintiffs must unite in instituting the suit, or the action will only be on the part of the one who brings it, and that judgment can be rendered only in favor of such person. In this connection, we are cited to *Roose v. Perkins*, 9 Neb., 311, where it is said that there could be no objection to all of those legally entitled to support, joining in an action; that so long as those entitled to such support constitute one family, they may unite in bringing an action. The case cited was decided prior to the enactment of the present law governing the sale of intoxicating liquors, but section 16 of the present law is almost identical with section 577 of the General Statutes of 1873, which was in force at the time of the decision referred to. In this repect we adhere to that decision, that the action *may* be brought, if desired, in the name of the wife and children, but we find nothing in the act now in force requiring it.

The section is specific, and provides that the married woman may institute in her own name a suit on the bond for all damages sustained by herself and children; and while it is permissible to bring such suit in the name of all, we find nothing in the statute requiring it, but rather, the plain letter of the law, that an action may be brought in the name of the mother alone. She does not sue as guardian or next friend. The money, when collected, should be paid to her, for the use of herself and children. Unless it should appear that, for some reason, not mentioned in the act—such as incompetency or incapacity—she would not be a suitable person to provide for the support of the family, she is entitled to collect all the damages for herself and children, by an action in her own name, and to receive the same in her own right, when collected.

The only error that we can discover in this case is, that the jury, perhaps by reason of the misdirection of the court, limited her recovery to what would, in their opinion, be the damages to the child, by reason of the loss of support, when the recovery should have been for the damages sustained by herself and child. But this would not call for a reversal of the judgment. We have carefully read the very able briefs presented by counsel for plaintiffs in error, and were it not for the provisions of our statute, which must control, we would not hesitate to adopt the view contended for by them. But as we view it, the case must be decided alone with reference to the statute. This being true, we think the judgment of the district court must stand. It is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.