J. Peter Jessen et al. v. Caroline M. Willhite.

Filed October 5, 1905. No. 13,914.

1. **Intoxicating Liquors:** Seller's Liability. One selling intoxicating liquor is liable, not only for the actual results of the sale, but for all damages growing out of the disqualification resulting from or contributed to by such sale, without reference to the time through which such disqualification may continue.

2. **Loss of Support:** Question for Jury. Where a husband becomes an habitual drunkard, and abandons his family and ceases to provide for its support, whether such loss of support is permanent or otherwise is a question of fact for the jury.

3. ——: Action: Mitigation of Damages. In an action by a wife to recover in behalf of herself and children for damages on account of the sale of liquor to her husband, in consequence of which sales he has become an habitual drunkard and has abandoned his family, the defendant is not entitled to show in mitigation of damages that the wife, since such abandonment, has commenced proceedings for divorce.

4. **New Trial:** Affidavits. Affidavits in support of a motion for a new trial on the ground of newly discovered evidence, which state that the defendant had used reasonable diligence to discover such testimony before the trial, but which fail to state the facts constituting such diligence, are insufficient.

ERROR to the district court for Lancaster county: Albert J. Cornish, Judge. *Affirmed.*

*J. B. Strode, E. F. Pettis* and *E. J. Murfin,* for plaintiffs in error.

*Stewart & Munger, contra.*

ALBERT, C.

This action was brought by Caroline M. Willhite, in her own behalf and in behalf of her three minor children, against J. Peter Jessen and Henry Gies, saloon-keepers, and the American Bonding Company, surety on their license bonds, to recover for damages alleged to have been sustained by the plaintiff and her children by reason of sales of intoxicating liquors to the husband of the plaintiff and the father of said children. It is charged in the petition that on or about the 15th day of April, 1902, and from that day thereafter until April 15, 1903, the defendant saloon-keepers sold and furnished the said husband intoxicating liquors, and thereby caused him to become an habitual drunkard, and that from the 15th day of April, 1903, until August 1, 1903, the defendant Jessen continued to furnish said husband with intoxicating liquors in sufficient quantities to cause his intoxication, whereby he became an habitual drunkard. It is further charged that, by reason of his habitual drunkenness, said James A. Willhite was rendered unfit to labor and carry on his business, and it caused him to squander his earnings and rendered him unable and incapable to furnish the plaintiff and her children any support, and caused him to abscond, abandon and desert his said family, and thereby deprived his family of his earnings, support and maintenance. The action was commenced in 1903, and at the time the oldest child of the plaintiff was 13 and the youngest 8 years of age. The evidence shows that the plaintiff was married to her husband and resided with him in the state of Kansas until the spring of 1902, when he came to the city of Lincoln, in this state, where he found employment as a stone-mason. He resided with his family in this state for something more than a year, when he absconded and abandoned his family. It sufficiently appears that, although he occasionally drank to excess before coming to Lincoln, he spent his evenings at home, was kind to his family and contributed from $50 to $60 a month to their support, and had an

42

earning capacity of about $4.50 a day; that he brought
with him to Lincoln something like $250 in money.
Shortly after his arrival in Lincoln, he began to frequent
the saloons of the defendants Jessen and Gies, and to drink
to excess, and in consequence became an habitual drunkard,
unfit to work or follow his trade, and in consequence con-
tributed practically nothing to the support of his family,
and since his abandonment of his family has contributed
nothing whatever to their support; and the plaintiff, al-
though she has made diligent inquiry, has been unable to
ascertain his whereabouts. The $250 which he brought
with him to Lincoln, as well as $25 which he borrowed
and for which he pledged the household furniture as se-
curity, were squandered in drink. At the date of the trial
he was 36 years of age. The jury returned a verdict for
the full amount claimed, but the court ordered a remit-
titur of $1,000, which was entered, and judgment was
given for $4,000. The defendants bring error.

That the evidence is sufficient to sustain a verdict in
favor of the plaintiff is tacitly conceded, but the defend-
ants contend that the judgment is excessive, and their con-
tention on this point is thus summed up in their brief: "We
contend that the defendants Jessen and Gies would not be
liable in damages for making Willhite a drunkard, but
only for the loss of the means of support during the period
they continued to furnish him liquors. This period of
time was less than 18 months." We do not believe that
contention can be upheld, in view of the construction which
this court has heretofore placed on that portion of our
liquor laws relating to civil damages. In *Wardell v. Mc-
Connell*, 23 Neb. 152, the court, referring to the traffic in
intoxicants, said:

"If such sale is made, the person making it is not only
liable for the actual results of that sale, but liable for all
damages growing out of the disqualification, without ref-
erence to the length of time through which it may con-
tinue."

In *Stahnka v. Kreitle*, 66 Neb. 829, the following lan-

guage of Mr. Commissioner AMES was approved by the court:

"One who has converted another from a sober and industrious life into an habitual drunkard is responsible for all the financial losses due to his act, including those caused by the subsequent thriftless and dissipated career of his victim, directly resulting therefrom."

When damages result from the sale of intoxicating liquors, every one who contributes to such result is a wrongdoer and liable. *Elshire v. Schuyler*, 15 Neb. 561; *McClellan v. Hein*, 56 Neb. 600, and cases cited. It is true that in this case the defendant saloon-keepers did not transform the husband from a sober man into an habitual drunkard, because he was more or less addicted to the excessive use of intoxicants before they sold to him. But they did take up the work when others had left off, and as a result of their sales his appetite for strong drink was fed and encouraged, until he was transformed from a man who, although addicted to the excessive use of intoxicating drinks, was kind to his family, and supported them by working at his trade, to one who became unfit for work, contributed practically nothing to the support of his wife and children, and who, regardless of the ties of nature, abandoned his family and became a vagabond. Whether such conditions will continue seems to be purely a question of fact for the jury, to be determined from all the facts and circumstances in evidence. And we are satisfied from the record in this case that the jury were fully warranted in finding that the plaintiff and her children were permanently deprived of the means of support which the husband would have furnished, but for his habitual drunkenness. That being true, in view of his age, his earning capacity before the defendants began to supply him with liquors, and the other facts and circumstances shown in evidence, a judgment of $4,000 cannot be regarded as excessive.

Our attention has been called to *Roberts v. Taylor*, 19 Neb. 184, where, on a state of facts in many respects similar to those involved in the case at bar, on a judgment of

$995.66⅔, this court ordered a remittitur of all in excess of $700. But that case differs from the present in two important particulars: There the husband still continued to reside with his family and to contribute to some extent to their support; his earning capacity was but $1.50 a day. In the case at bar the husband, whose earning capacity was $4.50 a day, has abandoned his family and contributes nothing to their support. Besides, it would appear that in the former case the court was influenced to some extent by the fact that a portion of the time the liquor was furnished with the wife's consent. In this case it does not appear that the wife consented to any of the sales of liquor to her husband, and, if she had, under *Gran v. Houston*, 45 Neb. 815, decided long after the *Roberts* case, it would be no defense.

The evidence shows that sometime after the husband deserted his family, the plaintiff instituted a suit for divorce on the grounds of drunkenness and nonsupport. This suit was pending when the case at bar was tried, and there is evidence tending to show that the plaintiff would not live with her husband, even if he should return sober. The following instruction, based on the foregoing evidence, was tendered by the defendants: "The jury are instructed that if you find from the evidence that the plaintiff has commenced an action for divorce against her husband, James A. Willhite, and you further find from the evidence that she would not live with him again under any circumstances as his wife, if he should return to her, then you cannot allow her damages for the loss of the means of support beyond the date of the commencement of such action for divorce." The instruction was properly refused. The action is not for damages for the loss of the society and companionship of the husband, but for damages to the means of support of the plaintiff and her children. If they have been permanently deprived of his support, and the jury were warranted in finding that they were, the sentiments the plaintiff may entertain toward her husband at this time, as well as her speculations as to whether she

would receive him, should he return sober, are wholly immaterial.

Another contention of the defendants is that their motions for a new trial on the ground of newly discovered evidence were overruled.  The motions are supported by affidavits.  The alleged newly discovered evidence relates to the habits of the plaintiff's husband before coming to Lincoln.  All these affidavits, with the possible exception of two, instead of setting out the particular efforts which had been made to procure the evidence for use at the trial, aver the bare conclusion that the defendants had used due diligence, and are clearly insufficient.  *Goracke v. Hintz*, 13 Neb. 390; *Tomer v. Densmore*, 8 Neb. 384; *Heady v. Fishburn*, 3 Neb. 263.  The two affidavits mentioned as possible exceptions were made by one of the defendants and his attorney, and show of themselves that the affiants were informed before the trial where the husband had resided with his family before coming to Lincoln, and that they were put in possession of information which, had they used it with reasonable diligence, would have led to the discovery of the evidence which they now claim would be forthcoming on another trial.  A new trial on the grounds of newly discovered evidence is only allowable when such evidence "could not, with reasonable diligence, have been discovered and produced at the trial."  As reasonable diligence was not shown, the motions were properly overruled.

Complaint is made of certain instructions given by the court on its own motion, but such complaint is disposed of, we think, by what has been said with respect to the defendants' first contention.

It is therefore recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.