August Stahnka et al. v. Jane F. Kreitle et al.

Filed December 17, 1902. No. 12,244.

Commissioner's opinion, Department No. 3.

1. **Intoxicating Liquor**: Action for Damages: Misjoinder. Persons engaged in selling intoxicating liquors under licenses obtained pursuant to the laws of this state, are not liable for damages resulting from a like traffic before they engaged in the business, and they can not be joined in an action against other persons to recover for such previously inflicted damages, although they may be liable to the same plaintiff for subsequent wrongs of a similar kind.

2. ——: ——: Liability. Persons engaged in selling intoxicating liquors under licenses obtained pursuant to the laws of this state, are liable in damages for all the legitimate and proximate consequences of their traffic, and if they have induced habitual drunkenness in a previously sober and industrious man, they are liable for a consequent thriftless and dissipated career, followed by him, after they have ceased to furnish him with liquors.

Error from the district court for Dixon county. Action for statutory damages under liquor license. Tried below before Graves, J. Verdict for plaintiff in the sum of $500. Judgment on verdict. *Reversed as to certain defendants; affirmed as to others.*

*Jesse L. Root, Matthew Gering, John J. McCarthy* and *Brown,* for plaintiffs in error.

*Cassius H. Whitney* and *Millard, contra.*

Ames, C.

There are in this case a large number of assignments and cross-assignments of error in petitions for the reversal of a judgment of the district court. One of the objections to the judgment which is presented in various ways and phases, is to the effect following. It is alleged in the petition and not denied as follows:

"1. That from the first day of May, 1896, to the first

day of May, 1900, the said defendants Detlof Kay and William Kay were engaged in the business of the retail traffic of intoxicating liquors in the village of Wakefield, in the county of Dixon and state of Nebraska, as partners under the firm name and style of Kay Brothers.

"2. That from about the first day of November, 1899, until the time of the filing of this petition the defendants August A. Stahnka and Charles W. Stahnka were engaged in the business of the retail traffic of intoxicating liquors in the said village of Wakefield, Dixon county, Nebraska, as partners, under the firm name and style of Stahnka Brothers.

"3. That from about the first day of May, 1899, until the fifth day of May, 1900, the defendant Frederick Valberding was engaged in the business of the retail traffic of intoxicating liquors in said village of Wakefield, Dixon county, Nebraska.

"4. That from the first day of May, 1900, until the time of the filing of this petition the defendant Detlof Kay has been engaged in the business of the retail traffic of intoxicating liquors in said village of Wakefield, Dixon county, Nebraska."

It is not alleged that any of the persons or firms above mentioned sold or gave away any liquors except during the time they were licensed so. to do, as specified in the petition, but during such times each of them did make such sales frequently, and in the course of their business, to one John B. Kreitle. It is alleged in the petition, and apparently proved to the satisfaction of the jury, that during all the time from the 10th day of July, 1896, continuously until the beginning of this action, in July, 1900, John B. Kreitle was an habitual drunkard, constantly in a state of intoxication with the liquors purchased and consumed by him in the saloons of the several defendants, and by that means continually incapacitated to earn money and provide for the support of the plaintiff, his wife, Jane F. Kreitle, which he would otherwise have been, and was previously, competent and able to do. By reason

of the incapacity of her husband, so caused, she had been deprived of his support, for which she prayed damages.

It will be observed that for nearly the whole of this time the defendants Kay Brothers were alone engaged in the saloon business, and alone committed the wrongs of which the plaintiff complains, and that before the beginning of the action the defendants Staknka had been engaged in the business only about nine months, and the defend-, ant Valberding only about fifteen months, and the defendant Detlof Kay alone only about ninety days. These persons were all joined with Kay Brothers as defendants, were all charged jointly with responsibility for failure of support during the whole period, of a little more than four years, of John B. Kreitle's incapacity; and a joint verdict therefor was, under the instructions of the court, returned against them all, and a joint judgment rendered thereon. Sufficient objection for misjoinder was seasonably taken by each of the defendants. It seems quite clear to us that these objections as to all the defendants (plaintiffs in error), except Detlof Kay and William Kay, ought to have been and ought now to be, sustained. Section 15 of chapter 50 of the Compiled Statutes,* entitled "Liquors," makes a licensed vender of intoxicants liable for the "support of all paupers, widows and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to, his traffic in intoxicating drinks." There is nothing in this language indicating an intent to make such a vender liable in damages attributable to such traffic by his predecessors in the business. It is unnecessary to discuss the question whether a statute imposing such a liability would be valid if enacted. The court will not, by a forced and unnatural interpretation of the statute, impute to the legislature so unusual if not unprecedented a purpose. Under the pleadings and proofs these defendants were undoubtedly jointly and severally liable with Kay Brothers for damages for failure to support during the time that they contributed to such failure. *Jones v.*

---

* Cobbey's Annotated Statutes, sec. 7165.

*Bates,* 26 Nebr., 693. But they are not liable for the consequences of wrongs in the commission of which they were not actually or constructively implicated, and which were perpetrated during a period of three and a half years and upwards before they begun the practices complained of. But by the verdict they are held jointly responsible with the Kays for these very wrongs, as well as for those in which they participated. By reason of the joinder not only was an apportionment of damages not attempted, but it was rendered impossible. There was a sufficient cause of action against each defendant, but it did not, as is required by section 88 of the Code, affect all the parties to the action. The cause of action against the Kays, for example, for failure to support during a period of four years, did not affect the cause of action against Stahnka Bros. for a like failure for the term of nine months.

Detlof Kay was engaged in the business and in the practices complained of, either singly or in partnership with his brother, throughout the entire time and was severally liable for all the damages for which the action was brought; and he is not entitled to contribution from those who were for a part of the time his joint tort-feasors. *Johnson v. Torpy,* 35 Nebr., 604. He was, therefore, not injured by the misjoinder. William Kay retired from the business on May 1, 1900, some ninety days before the expiration of the period for which damages were recovered; but the record is sufficient to support a finding that the incapacity of John B. Kreitle, for which William was responsible jointly and severally with his brother, was continuous from that date onward. The latter, having contributed to form and confirm the habit of drunkenness in the former, may, we think, properly be held responsible for the continued course of dissipation consequent thereupon. So that, although his successors in business can not be punished for his previous conduct, he may justly be treated as a participant in their subsequent wrong-doing, for which he had furnished them a subject and the opportunity. The plaintiff was entitled to recover, not because

her husband was a drunkard, but because William and his brother had made him one, and one of the natural and proximate consequences of his habit was its continuance. William had helped to infect the husband with a malignant disease, which is in many 'cases incurable, and so long as it continued to afflict the subject of it, he was equally responsible with those who contributed to the gratification of the unnatural appetite which it had created.

We do not agree with the opinion expressed by the late Mr. Justice MAXWELL in *Jones v. Bates, supra,* to the effect that Kreitle would, "most likely," have reformed his habits if he had not been furnished with liquors by the later saloon-keepers.    On the contrary, wider experience and observation favor the supposition that he would have obtained the means of stilling the cravings of his appetite from  innumerable  sources  if  these  dealers  and  their saloons had not existed.    It might, indeed, be argued with no small degree of plausibility that a desire for, and the habitual excessive use of, stimulating and narcotic drugs arise out of specific physical characteristics, in the absence of which an appetite for them will not be acquired. In consonance with this opinion, it has been epigrammatically said that drunkards, like poets, are born, not made. But we are precluded from a speculation of this kind by the plain meaning of the statute, and by the interpretations which have repeatedly been put upon it by this court.    It is commonly understood, and it is the theory of the law, that a prolonged and frequent excessive use of alcoholic drinks produces that peculiar state of mental and bodily infirmity and incompetency by which such use is often, but not always, accompanied and followed; and it is the policy of the law to visit the pecuniary consequences of such inefficiency upon the persons who furnish the victims with such drinks.    The court has no concern with the wisdom, justice or expediency of this theory, but is bound to administer the law with all of its logical deductions, and in such manner as that its various applications shall be, as far as possible, consistent with each other.    In this view

of the matter, one who has converted another from a sober and industrious life into an habitual drunkard is responsible for all the financial losses due to his act, including those caused by the subsequent thriftless and dissipated career of his victim, directly resulting therefrom. In accordance with this view, there can be no doubt of the liability of both of the defendants Kay during the whole time involved in the action.

There are a large number of other errors assigned, but however they might have affected the other defendants (plaintiffs in error) in a different aspect of the case, they are not of such a nature that the defendants Kay can complain of them. There is an abundance of competent evidence in the record to sustain a recovery against them, and it can not be pretended that $500 is an excessive award of damages for four years' incapacitation of a skilled mechanic, in the healthful vigor of early manhood. We, of course, do not mean to say that the defendants other than the Kays are absolved from responsibilty by the conduct for which the latter are held liable, or that the former may not be successfully prosecuted in a proper action.

It is recommended that, as to the plaintiffs in error other than William Kay and Detlof Kay, the judgment of the district court be reversed, and the action dismissed at the costs of the defendant in error, and that as to the last-named plaintiffs in error the judgment be affirmed.

Duffie and Albert, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that as to the plaintiffs in error other than William Kay and Detlof Kay, the judgment of the district court be reversed, and the action dismissed at the costs of the defendant in error, and that as to the last-named plaintiffs in error the judgment be affirmed.

JUDGMENT ACCORDINGLY.

NOTE.—The commissioner who wrote the foregoing opinion, was the author of the law he construed, to wit, chapter 50, Complied Statutes.—W. F. B.

